## 27348. DURHAM LAND COMPANY *v.* COUEY.

DECIDED MAY 3, 1939.

*Rosser & Shaw,* for plaintiff in error.

*J. N. Hunter, J. M. C. Townsend,* contra.

GUERRY, J. This is a workmen's compensation case. Frank Couey, the claimant, suffered a total disability which would entitle him under the evidence to $7.50 per week for 350 weeks. The real issue before the Department of Industrial Relations was whether or not the claimant, at the time he was injured, was an employee of the Durham Land Company, or an employee of an alleged lessee or independent contractor of the mine where the injury occurred. The Durham Land Company owned several thousand acres of coal-mining land in Dade and Walker Counties. In 1930 it leased all of this land and mining machinery to McMillan, Miller, and Card for three years, which lease expired May 1, 1933. W. A. Tolliver was the acting president and generally in charge of the properties and business of the Durham Land Company. McMillan, Miller, and Card became insolvent in May, 1932, and at that time, under a written assignment, they surrendered their entire assets, including the lease contract and commissary operated by them, to W. A. Tolliver as trustee for the benefit of their creditors, "to convert the property into cash and apply the proceeds

to the payment of their debts." W. A. Tolliver, who was in charge of Durham Land Company, the chief creditor, was also in complete charge of the mines and mining business under the lease which the Durham Land Company had given to McMillan et al., which lease expired May 1, 1933. Under the terms of the assignment contract W. A. Tolliver was to convert the property into cash for the benefit of creditors. All rights of McMillan et al. to the lease expired May 1, 1933. Tolliver, who was in supreme charge of the Durham Land Company, testified that as trustee under the appointment stated above he made verbal agreements with himself as president of the Durham Land Company, for a month-to-month extension of the lease, and that as trustee for McMillan et al. he was in charge of the mine on August 28, 1933. All the coal mined on the property was turned over to the Durham Land Company, who sold it where they pleased, and at prices fixed by themselves, and collected the prices so paid. On August 28, 1933, after the expiration of the lease, the claimant was injured in the course of his employment. He testified that W. B. Reeves was the foreman in charge who hired him. The evidence shows that in February, 1932, W. B. Reeves entered into a contract with McMillan et al., to mine coal, subject to their lease contract with the Durham Land Company. The record further shows that on March 30, 1933, W. A. Tolliver notified W. B. Reeves that the lease between Durham Land Company and McMillan et al. expired May 1, 1933, and that therefore the lease between McMillan et al. and Reeves would be at an end after May 1. The employees operating this mining property after May 1, 1933, were paid by W. B. Tolliver. The houses they lived in belonged to the Durham Land Company. The commissary was operated by W. B. Tolliver. The house rent and grocery bills and advances were deducted from the payment made them by W. B. Tolliver.

The claimant filed application for compensation in October, 1933. The hearing thereon was continued several times. He testified that in December, 1933, Weeks, general manager of the Durham Land Company, and Tolliver had him to come to Chattanooga, Tennessee, to the offices of the Durham Land Company, and told him, if he would get rid of his counsel who had filed the application for compensation, they would make settlement with him; that in compliance with that request he wrote to his attorney, severing his con-

nection with the case; that Weeks and Tolliver agreed to pay him $7.50 weekly; and that he was paid these amounts by W. B. Tolliver as trustee for McMillan et al. until the sum of $550 had been paid. His attorney, after dismissal, filed application with the Department of Industrial Relations for attorney's fees, but no hearing was ever had on the matter until after W. B. Tolliver ceased paying compensation and after the claimant asked for the hearing had in the present matter. See, in this connection, *Couey* v. *Durham Land Co.*, 57 *Ga. App.* 279 (195 S. E. 229). Without making a more detailed statement of the evidence adduced, we think the commissioner was authorized to find that "Frank Couey was an employee of the Durham Land Company on August 28, 1933, and that agreements to pay him compensation at the rate of $7.50 per week and upon which $550 was paid, were executed and paid by the Durham Land Company, and not by McMillan et al., as alleged." The evidence adduced was amply sufficient to authorize this finding; and that the conduct of the Durham Land Company, which was the main creditor of the defunct and insolvent partnership of McMillan et al., in placing its vice-president and treasurer, and one in supreme charge of its affairs, in charge of such defunct partnership and continuing it in business after the time of the expiration of its lease, was but a subterfuge to avoid responsibility which might be incident to the conduct of its mining business. The appointment of W. B. Tolliver as trustee was for the sole purpose of converting the assets of McMillan et al. into cash and paying its creditors. Such agreement did not contemplate or comprehend the continuing of such partnership in business. The Durham Land Company, being the main creditor, and having control of its entire operation and output, by and through its head officer, can not escape liability for the acts of its head officer in conducting a business under such circumstances. It continued the business of McMillan et al. It did not sell its assets and convert them into cash and pay its creditors. It undertook to operate the business by and through its chief official, for the purpose of paying off the indebtedness due to it by McMillan et al., with the idea that if it was successful it would profit thereby; and if unsuccessful, it would escape the liability that legally attached to the operators of the mine.

When the assets of the assignor consist of a mining lease which expires on a named date, the assignee is without authority to con-

tinue such mining business by making a new lease for the purpose of continuing the operations of the mine. The assets of the assignors consisted of a mining lease; when this lease expired they had no further assets to convert into cash. The Durham Land Company, acting through its head officer, W. B. Tolliver, could not operate, as it attempted to do, its own mines in the name of W. B. Tolliver, trustee, after the expiration of the lease, and thus escape liability for cost of operating, or damages sustained by employees in such operations. Its duty as a trustee or assignee was at an end when the assets of the assignors ceased to be. When it attempted to create new assets, by making new leases which were for its own benefit, and operating its own mine, out of which it should be able to sell its coal and earn a commission for itself and possibly make enough to pay debts due to it by the owners of the original lease, it exceeded its authority, and made itself liable for any expense or obligation incurred in the continuation of the mining business. Tolliver, as appears from the evidence, was acting for and in behalf of the Durham Land Company.

This court fully approves the finding of the Department of Industrial Relations and of the judge on appeal.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*