**MERRIN JEWELRY CO., Inc., Plaintiff,**

**v.**

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Defendant.**

**No. 69 Civ. 481.**

United States District Court
S. D. New York.

May 13, 1969.

---

Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for plaintiff, by Reginald Leo Duff, New York City, of counsel.

Tell, Cheser, Werner & Breitbart, New York City, for defendant, by Solomon M. Cheser, New York City, of counsel.

## OPINION

POLLACK, District Judge.

This is a diversity case. On May 2, 1968 plaintiff, while insured by defendant under a "Jewelers Block policy" was the victim of an armed robbery occurring on plaintiff's premises. Defendant was notified of the loss and sent its representatives to take inventory and in cooperation with plaintiff's accountants, to audit the books and records of the plaintiff.

On July 31, 1968 the defendant sent plaintiff a notice of cancellation of the policy effective on August 6, 1968. A claim of loss in the amount of $352,716.-23 was submitted on or about August 6, 1968 to the defendant under the policy. Plaintiff's principal officer and its accountant were orally examined thereafter by defendant's agents in connection with the claim.

On November 8, 1968 defendant informed plaintiff that defendant "considers its policy of insurance to be null and void as of its inception date".

Plaintiff has brought this action to recover the full value of the stolen merchandise and for damages incurred and to be incurred from alleged improper and wrongful cancellation of the insurance pursuant to a plan and course of conduct to avoid responsibility under the

policy and to force the plaintiff, through economic pressure and prospective expense, to accept in settlement of its claim a grossly inadequate amount; and plaintiff also demands punitive damages against defendant for engaging generally in a wrongful scheme to thwart claimants insured by it from pursuing their claims for recovery of losses sustained.

Defendant moves pursuant to Rule 12(b) Fed.R.Civ.P.,

(a) to dismiss the first two counts with leave to replead because they allegedly "split" a single cause of action;

(b) to dismiss (without leave to replead) the third, fourth and fifth counts which seek a tort measure of damages not recoverable in an action in contract; and

(c) to dismiss the sixth count for punitive damages, because of plaintiff's alleged failure to exhaust administrative remedies.

█ The paragraphs in plaintiff's complaint entitled "First Cause of Action" and "Second Cause of Action" split a single claim into two parts. Rules 8 (a) (2) and 10(b) of the Federal Rules of Civil Procedure steer the careful draftsman away from this practice. However, where as here the opposing party can suffer no discernible prejudice, the Court pursuant to Rules 8(e) and 8(f), may overlook such inartistic pleading in the interest of avoiding unnecessary collateral and time-consuming exercises. Pleadings should not be dismissed or ordered amended unless the allegations therein are not sufficiently particular to give notice of the matter in controversy or unless the form thereof is instinct with demonstrable prejudice. No doubt these paragraphs will be treated appropriately and as a single claim at trial. Defendant's motion to dismiss and to require repleading of the first two counts in the complaint is, accordingly, denied.

█ █ In the paragraphs comprising the third, fourth and fifth counts, plaintiff seeks to plead a tort claim for what is essentially a breach of contract. New York law permits this in certain factual circumstances. Albemarle Theatre, Inc. v. Bayberry Realty Corp., 27 A.D.2d 172, 277 N.Y.S.2d 505 (1st Dept. 1967); Rich v. New York Central & H.R.R.R. Co., 87 N.Y. 382 (1882). Where the facts constituting the breach of the contract also constitute a breach of an independent legal duty owed by the defendant to the plaintiff, a separate claim for tort will lie. An example of this occurs when a common carrier permits goods in its custody to suffer damage; this not only breaches its contract of safe carriage but imposes liability in tort under the absolute standard of care imposed by the common law. Cf. J. & H. Flyer, Inc. v. Pa. R.R. Co., 316 F.2d 203 (2d Cir. 1963).

█ Similarly, where the facts constituting the breach of contract are part of a larger plan to achieve an unlawful end (or a lawful end through unlawful means), a claim in tort will also lie. An example thereof occurs when the breach of the contract is but part of a course of conduct aimed at destroying plaintiff's business for the benefit of its competitors; in such circumstances, plaintiff may sue in tort for wrongful interference with its business. North Shore Bottling Co. v. C. Schmidt & Sons, Inc., 22 N.Y.2d 171, 292 N.Y.S.2d 86, 239 N. E.2d 189 (1968).

█ However, a claim in tort does not lie on allegations of conspiracy of a party to a contract to break it, and his consequent failure to carry out the contract, in pursuance of the conspiracy, without more. Bereswill v. Yablon, 6 N.Y.2d 301, 189 N.Y.S.2d 661, 160 N.E. 2d 531 (1959); cf. Osgoodby v. Talmadge, 45 F.2d 696 (C.C.A.2d, 1930).

The complaint herein does not come within the theory of the *Albemarle Theatre,* the *Rich* or the *North Shore Bottling* cases for no larger scheme designed for the purpose of damaging plaintiff's business is alleged. The claim

herein, at most, asserts a willful attempt on the part of defendant to avoid its obligations under the contract. The only scheme alleged is the attempt to avoid paying money that plaintiff claims is due to it under the contract.

■ Defendant's motion pursuant to Rule 12(b) (6) to dismiss the third, fourth and fifth counts in the complaint is, accordingly, granted, with leave granted to plaintiff to amend its contract claim to include such items of damage presently included in the stricken counts as New York law may permit.

■ In its sixth count plaintiff seeks punitive damages for the purpose of deterring defendant from continuing what plaintiff alleges is its general practice and plan of attempting to avoid liability for substantial claims that arise under its insurance contracts. Although a plaintiff assumes a difficult burden of proof when it attempts to play the role of "private attorney general", a claim for exemplary damages is cognizable under New York law where fraud, aimed at the public generally, is gross and involves high moral culpability. Walker v. Sheldon, 10 N.Y.2d 401, 223 N.Y.S.2d 488, 179 N.E.2d 497 (1961). It is highly doubtful whether a claim such as is made here qualifies for the category to which the Courts have extended relief in the form of punitive damages. Cf. James v. Powell, 19 N.Y.2d 249, 279 N. Y.S.2d 10, 225 N.E.2d 741 (1967); Roginsky v. Richardson-Merrell, Inc., 378 F.2d 832, 838 et seq. (2d Cir. 1967).

Defendant urges that the State of New York, through its Insurance Law, has entrusted the regulation of insurance companies doing business in New York to the State Insurance Department, at least in the first instance; and that the sixth count in the complaint should be dismissed for the further reason that plaintiff has failed to exhaust its administrative remedies.

■ The exhaustion of administrative remedies is a doctrine more properly applicable to the timing of judicial review of the actions of administrative bodies. What is involved here is the doctrine of primary jurisdiction, which is a guide in determining whether a Court should refrain from exercising its jurisdiction until after a specialized administrative agency has had an opportunity to pass on some question (or some aspect of a question) arising in the proceeding before the Court. 3 Davis, Administrative Law Treatise § 19.01 (1958).

While defendant has not pointed to any section of the Insurance Law which purports to oust the Courts of jurisdiction of the claim asserted in plaintiff's sixth claim, it is clear that under Insurance Law, Article 9-D, §§ 270 through 282, McKinney's Consol.Laws, c. 28, the Insurance Department has been entrusted by the State with a broad mandate and substantial powers to investigate and correct practices such as those charged by the plaintiff. An aggrieved party may intervene in such administrative proceedings either in person or by counsel [§§ 275(2), 278(1)]; and the Insurance Department is empowered to bring a civil action against an alleged offender for punitive damages (§§ 36, 280).

The problem raised by the motion is one of competing interests: on the one hand, the policy of encouraging plaintiffs to bring suits that are at least partially in the public interest by allowing the possibility of punitive damages; and on the other hand, the need for orderly and sensible coordination of the work of agencies and Courts. The importance of the latter cannot be overemphasized. See Far East Conference v. United States, 342 U.S. 570, at p. 575, 72 S.Ct. 492, 96 L.Ed. 576 (1952).

■ Upon a careful consideration of the facts and circumstances alleged in the complaint, the Court is of the opinion that the more sensible and orderly course is to dismiss the sixth claim and thereby remit the plaintiff, if it is so

advised, to the Insurance Department of the State of New York for such attention as the complaint may deserve. Cf. Marony v. Applegate, 266 App.Div. 412, at p. 420, 42 N.Y.S.2d 768 (1st Dept. 1943). The sixth claim is dismissed accordingly.

So ordered.

## MEMORANDUM ON REARGUMENT

The plaintiff moves to reargue the determination of May 13, 1969 which dismissed the Third, Fourth, Fifth and Sixth Counts of the Complaint. The Counts of the Complaint are briefly outlined in the Addendum hereto. It is contended that challenging questions of law are presented by the motion for reargument, that these were not raised originally by counsel for either side and that the Court thus has not had the benefit of argument of counsel thereon. It is further contended that the Court exceeded its constitutional and statutory power by declining to entertain a claim [the Sixth Count] within its plenary diversity jurisdiction and that the Court's order misconceives the office of a motion to dismiss under Fed.R.Civ.P. 12(b)(6), particularly in "a developing line of authority". Plaintiff further moves (a), pursuant to Rule 54(b) for a certificate directing the entry of judgment dismissing the Sixth Count for punitive damages; and (b), pursuant to 28 U.S.C. § 1292(b) for a certificate that there are questions which should be considered by immediate appeal.

A careful review of the complaint confirms that, essentially, the plaintiff has sought to fractionate a simple claim for an insured robbery loss into a six Count melange of charges all of which still add up to no more than an alleged breach of contract by the insurance company. The colorful allegations employed in the last four Counts do not add cubits to the measure of the claim expressed in the First and Second Counts. For the purposes of plaintiff's motions all these allegations were assumed to be true. Nonetheless, the claims sounding in tort which were dismissed were found to be insufficient in law. In addition, they are not sufficiently separate from the rest of the complaint to warrant entry of judgment under Rule 54(b); and they do not pose controlling legal questions, the resolution of which by immediate appeal might advance the ultimate termination of the litigation. Indeed there are grave possibilities of inordinate delay inherent in starting a course of interlocutory appeals herein.

The plaintiff mentions in its brief that the Court should hold available the dismissed allegations for a "developing line of authority" and that plaintiff should not be prevented from prosecuting such allegations "in the 5 or 6 years remaining between the present and the time of trial." This prediction of pretrial delay misconceives the time needed in this District for the orderly disposition of civil claims diligently and properly litigated and weighs heavily against the desirability herein of postponing a determination of the merits of the insurance claims pending interlocutory appeals on the so-called developing legal principles. Indeed, following the thought expressed by the plaintiff in its Third Count, the plaintiff would want the funds due on its insurance claims at the earliest possible date.

In respect of the Sixth Count, it may be noted that in a letter-brief submitted to the Court after the oral argument plaintiff's counsel expressed their opinion that "Punitive damages is [sic] not, as all the cases recognize, an independent cause of action: it [sic] is merely ancillary to an action for compensatory damages, * * *".

Under this argument the Sixth Count is merely ancillary to the dismissed Third, Fourth and Fifth Counts and falls with them and would not, for this further reason, warrant the certificate requested on this motion.

The Sixth Count is subject to dismissal either on the ground that a claim for punitive damages is not an independent claim on which relief may be granted, or, on the doctrine of Far East Confer-

ence v. United States, 342 U.S. 570, 575, 72 S.Ct. 492, 96 L.Ed. 576 (1952); to the same effect, see, United States v. Western Pac. R. R. Co., 352 U.S. 59, 63–64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). It is for the plaintiff to determine whether it desires to take recourse to the New York State Insurance Department to deal with alleged improper practices of the defendant. Whether it does or does not would not alter the Court's determination of the plaintiff's motions.

Upon reconsideration, the original determination is adhered to and the plaintiff's motions are, in all respects, denied.

So ordered.

### ADDENDUM

*First Count*

Plaintiff claims the insured value of the "retail" merchandise lost in the robbery and covered under the policy of insurance.

*Second Count*

Plaintiff claims the insured value of the "catalog" merchandise lost in the robbery and covered under the policy of insurance.

*Third Count*

Plaintiff claims that defendant schemed to learn all about plaintiff's insurance claim by investigations whose purpose was solely to unearth technical defaults and breach of policy conditions. This was part of a plan to interpose expense and delay in the plaintiff's recovery of its loss. All of defendant's objections to payment are specious and the plaintiff has lost sales including part of its Christmas trade because plaintiff has been unable to replenish its stock of merchandise through lack of funds.

*Fourth Count*

The non-payment of plaintiff's claim is known generally in the trade and this has made creditors and suppliers hesitate about extending credit to the plaintiff, causing plaintiff damage the amount of which plaintiff "is presently unable to state".

*Fifth Count*

The plaintiff could have supplied additional proof or otherwise adjusted items questioned by the defendant as a result of its investigation but the defendant nonetheless forced on plaintiff the expense of accountants and attorneys to collect its claim, for which expense it seeks recovery.

*Sixth Count*

The defendant's course of conduct has been pursued against other substantial insurance claimants and in the tortious and fraudulent scheme to avoid payment of insured losses or to cause the expense of accountants and attorneys to collect them. This was conduct perpetrated against the general public and against the public policy of New York. To deter the defendant and other insurance carriers from similar practices, punitive damages are claimed and must be given to the plaintiff.